# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 05/09/2022 12:40 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Ruiz,Deputy Clerk

Case 2:21-cv-08681-MWF-AGR   Document 44-1   Filed 09/22/22   Page 2 of 42   Page ID #:158

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Yolanda Orozco

David D. Queen [SBN 207340]
225 S. Lake Ave. Suite 300
Pasadena, CA 91101
Tele: 626-689-2213
Facsimile: 626-689-2214
Email: ddqueen@queenlaw.com
Attorney for Plaintiffs Paramount Investigative Services, Inc.
and Kenneth Childs

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**
**STANLEY MOSK COURTHOUSE**

|  |  |
|---|---|
| **PARAMOUNT INVESTIGATIVE SERVICES, INC., and KENNETH CHILDS,**<br><br>    **Plaintiffs**<br><br>                  **vs**<br><br>**IRIS AU, DREAM AGENCY, INC., VURG.COM, ZORT, INC. and DOES 1 through 10,**<br><br>    **Defendants** | **UNLIMITED CIVIL 22STCV15330**<br><br>**VERIFIED COMPLAINT DAMAGES FOR:**<br><br>  1.)  **Theft by Deception;**<br>  2.)  **Intentional Misrepresentation;**<br>  3.)  **Business Disparagement;**<br>  4.)  **Unfair Business Practices (California Business & Professions Code §17000, *et.seq*); and**<br>  5.)  **Intentional Infliction of Emotional Distress** |

**David D. Queen**
Attorney at Law
225 S. Lake Ave. Suite 300 • Pasadena CA 91101
Tele: 626-689-2213 • Facsimile: 626-689-2214

   **COME NOW, the PLAINTIFFS,** by and through their undersigned counsel, and allege as follows:

#### I.PARTIES

   1. Plaintiff, Paramount Investigative Services, Inc. ("PARAMOUNT"), is a California corporation with its primary place of business at 633 W. Fifth Street, Los Angeles, CA.

PARAMOUNT is duly licensed by the California Secretary of State, Bureau of Investigative Services. PARAMOUNT'S primary business is providing investigative and security services.

2. Plaintiff Kenneth Childs ("CHILDS") is PARAMOUNT'S Qualified Manager and CEO, duly licensed by the California Secretary of State, Bureau of Investigative Services. Collectively PARAMOUNT and CHILDS are referred to herein as PLAINTIFFS.

3. Defendant Iris Au ("AU") is an individual who has been previously employed as a real estate agent. She is believed to be in her mid to late 30s. AU has no known financial expertise, training, or meaningful experience in finance, personal or corporate investments or cryptocurrency.

4. Dream Agency, Incorporated ("DREAM") is a California corporation. In its California Secretary of State Statement of Information, filed on March 29, 2022, DREAM'S corporate purpose is described as a "marketing agency." The Statement of Information identifies AU as the Chief Executive Officer, Secretary, Chief Financial Officer, and sole Director and as DREAM'S agent for service of process. Its corporate headquarters is listed as 1048 Irvine Ave. #373, Newport Beach, CA 92660. That address is

Verified Unlimited Civil Complaint - 2

in a strip mall. Public records list the tenant for unit 373 as Tower Management, Inc., not DREAM or AU. The California Secretary of State database shows no active corporation named Tower Management.

5. The Defendant VURG.COM'S ("VURG") website describes itself as "a peer to peer marketplace where users can buy, sell and store popular cryptocurrencies." VURG's website states that it is based in Newport Beach, CA. No specific address for VURG is shown on its website. VURG'S website identifies AU as the "founder and CEO." The Secretary of State database shows no business listing for VURG. The website Instagram revealed that as of April 12, 2022, VURG had 775 followers and oddly lists its location as "The Moon." PLAINTIFFS allege that VURG is a d/b/for AU.

6. Defendant ZORT, Inc. ("ZORT") is a Delaware Corporation which lists its primary place of business as California. ZORT claims to be a software platform which allows subscribers to trade in cryptocurrencies. IZA holds himself out as the "founder and CEO" of ZORT.

7. DOES 1 through 10 are persons or entities whose exact identities are unknown but are believed to have aided, abetted, assisted, and conspired with the named DEFENDANTS. As the DOES' exact identities become known, they will be added as named Defendants. AU, DREAM and VURG

Verified Unlimited Civil Complaint - 3

and the DOES are jointly referred to as the DEFENDANTS unless expressly stated otherwise.

## II. NON-PARTY CONSPIRATORS

8. Non-party conspirator Adam Iza ("IZA") is an individual who resides in Los Angeles County. He is believed to be in his late 20s. IZA also uses various aliases including Adam Zort, Adam Asaad Iza and Ahmed Faiq. IZA'S true surname is not currently known to Plaintiffs, although his birth name is believed to be Ahmed Faiq. For purposes of this complaint, however, he will be referred to as "IZA." It is believed that IZA has no legitimate job or source of earned income and lives off various schemes related to cryptocurrency fraud. IZA has no known financial expertise, training, or meaningful experience in finance, personal or corporate investments or cryptocurrency. IZA conspired with others whose roles in the conspiracy are not fully known at this time. Therefore, IZA and those individuals will be collectively referred to as the CONSPIRATORS unless expressly stated to the contrary.

9. AU and IZA reside together at 277 St. Pierre Road, Los Angeles, California, along with AU's mother and AU's children from other relationships. At least one Internet real estate listing service estimates the value of their current residence at $28 million.

Verified Unlimited Civil Complaint - 4

## III. JURISDICTION AND VENUE

10.  All relevant actions and correspondence by and between the Parties and CONSPIRATORS took place in Los Angeles County. All Parties and CONSPIRATORS reside in or conduct business in Los Angeles County, California.

## IV. GENERAL ALLEGATIONS

11. It is now believed that DEFENDANTS, along with the CONSPIRATORS, created and/or participated in a massive Ponzi and fraud scheme to con unsuspecting individuals into investing hundreds of millions of dollars in their bogus cryptocurrency fund.

12. Defendant AU, acting individually and through DREAM and VURG, conspired with and joined IZA and ZORT in a scheme designed to defraud unsuspecting cryptocurrency investors by promising them services, profits, and security for their funds without revealing to their victims that DEFENDANTS and CONSPIRATORS were converting investor funds to AU'S and IZA'S personal use.

13. On or about November 15, 2021, IZA contacted CHILDS to enlist the service of PARAMOUNT. IZA told CHILDS that an individual IZA identified as Enzo Zelocchi ("ZELOCCHI") had stolen a laptop computer belonging to IZA and ZORT which IZA claimed contained data necessary for IZA

Verified Unlimited Civil Complaint - 5

to access Bitcoin funds belonging to IZA and ZORT which IZA valued at $1,000,000,000 (one billion dollars USD).

14. IZA told CHILDS that he wanted PARAMOUNT to locate ZELOCCHI for the purpose of aiding IZA to assist law enforcement in arresting ZELOCCHI and retrieving the stolen laptop. IZA told CHILDS that time was of the essence and that he wanted PARAMOUNT to conduct a multiple-investigator 24/7 surveillance of ZELOCCHI and to identify and follow anyone associated with ZELOCCHI.

15. Based on the representations made by IZA and IZA'S claims about ZELOCCHI, CHILDS agreed to assist IZA. On November 25, 2021, IZA and PARAMOUNT signed a written Services Agreement, a copy of which is attached hereto as Exhibit A.

16. The Agreement contains the following material provision under the heading "Scope of Services":

"The Agency [PARAMOUNT] has been hired by Client to perform surveillance and try to establish [in] what apartment this person [ZELOCCHI] resides. We are to follow this person and contact the client to assist with the possible arrest or confrontation for Adam's electronic devices …."

17. The Agreement also contains the following material provision under the heading "Warranties/Guarantees":

"The Client warrants and guarantees that: (a) it has retained the Agency's services **solely and exclusively** for the reasons described above [Scope of Services] … and (c) the Client agrees to use the results of the

Verified Unlimited Civil Complaint - 6

Agency's investigation **solely for lawful purposes**." (Emphasis added)

18. The Agreement contains an arbitration clause. The Agreement expressly states: "The parties to this agreement are Paramount Investigative Services … and Adam Zort or Adam Iza …." IZA signed the Agreement as "Adam Zort." Therefore, the named DEFENDANTS were not signators of the Agreement and not subject to the arbitration clause. PLAINTIFFS reserve the right to petition to rescind the arbitration clause as it relates to IZA personally and to amend this Complaint to include various breach of contract actions and related matters covered in the Agreement.

19. Upon signing the Agreement, IZA paid a $1,000.00 retainer to PARAMOUNT on November 25, 2021, using an American Express credit card with the last four digits 1009. Thereafter, on January 3, 2022, IZA paid PARAMOUNT an additional $4,000.00 using that same credit card. On January 21, 2022, IZA authorized an additional $25,000.00 using that same credit card. Those credit card transactions all used "Square" as the processing entity.

20. Thereafter, IZA informed CHILDS that he preferred to pay PARAMOUNT going forward by wiring funds into PARAMOUNT'S Wells Fargo bank account. CHILDS agreed to IZA'S request and provided PARAMOUNT's bank account routing

and account numbers. On February 1, 2022, PARAMOUNT'S account received a wire transfer of $32,400.00; on February 22, 2022, PARAMOUNT received a wire transfer of $59,900.00. Unknown to CHILDS at the time, the wire transfers were made by and through DREAM.

21. When IZA signed the Agreement, IZA knew that his true purpose for hiring PARAMOUNT was not to use information gathered to assist the police or for "lawful" purposes, but rather to use PARAMOUNT's investigation results to steal the laptop and threaten ZELOCCHI and others and to inflict bodily harm to locate the laptop computer.

22. DEFENDANTS were aware of IZA'S actions and relationship with PARAMOUNT. AU'S relationship and involvement with IZA was intentionally withheld from PLAINTIFFS. Had CHILDS then known DEFENDANTS' and CONSPIRATORS' true intentions, he would not have agreed to provide PARAMOUNT'S services to IZA, ZORT or the DEFENDANTS.

23. Because of IZA'S expansive surveillance and investigative demands, PARAMOUNT employed the services of numerous investigators and operatives whose salaries and expenses were PARAMOUNT'S obligation to pay. Ultimately,

PARAMOUNT incurred more than $200,000.00 in expenses due from IZA and ZORT.

24. IZA enlisted the services of multiple Los Angeles County Sheriff's Deputies to provide security and to act on his behalf in carrying out his operations. Among those was Deputy Christopher Quintenero ("QUINTENERO") who assisted IZA in obtaining information, including vehicle registration and residential information for individuals IZA believed had stolen his laptop computer. IZA'S relationship with Quintenero was not originally to disclosed to PLAINTIFFs.

25. AU, IZA and ZORT have been sued in U.S. District Court for Central District of California (Khan v. Zort, Inc. et.al. 2:21-cv-08681) on allegations that the defendants in that case violated state and federal securities fraud laws as part of a cryptocurrency scheme to defraud numerous individuals of hundreds of millions of dollars from starting in February 2020. DEFENDANTS and CONSPIRATORS never disclosed their prior and/or continuing conduct involving Kahn and Woody.

26. IZA'S claims to PLAINTIFFS that ZELLOCHI stole the laptop computer from IZA to get access to ZORT'S funds was false. Rather, DEFENDANTS and the CONSPIRATORS wanted to retrieve the computer because it contained information

documenting and thereby implicating DEFENDANTS and others in their massive cryptocurrency fraud scheme. It is further believed that DEFENDANTS' true purpose in hiring PARAMOUNT was not, as claimed, to locate a laptop "stolen" from IZA but instead to retrieve the evidence in ZELLOCHI'S possession that implicated DEFENDANTS and others in criminal and civil fraud. PLAINTIFFS now believe that sometime following the 2018 assault on Woody and the theft of the laptop, ZELOCCHI double-crossed DEFENDANTS and the CONSPIRATORS and took the computer for himself.

27. IZA, ZORT and AU have been sued in the Superior Court, County of Los Angeles (Woody v. Zort et.al. Civil Unlimited 22STCV06878). That complaint contains the following allegations which PLAINTIFFS now believe to be supported by evidence and therefore believe to be true. The Woody complaint alleges that on or about September 1, 2018 IZA and ZELOCCHI stole a laptop computer from Troy Woody containing 7,100 Bitcoin worth $284,500,000 along with personal property. The Woody complaint includes the following pertinent allegations:

> "On the evening of September 1, 2018, Woody along with friend Eric Taylor ("Taylor") and Defendants ZELOCCHI and IZA collectively met for a dinner, planned and arranged by Defendant ZELOCCHI. ZELOCCHI's stated purpose was to discuss cryptocurrency investing and opportunities.

"Only a few hours later, on September 2, 2018, at approximately 1:45 am, Woody, Taylor and friend Michelle Masters ("Masters"), were peacefully gathered at an apartment located at 7400 Hollywood Blvd. ZELOCCHI contacted Taylor to come down to the lobby. There Taylor was assaulted by ZELLOCCHI and IZA, and pills were forced into his mouth to ingest. Taylor was handcuffed, and his apartment keys were taken from him and used by IZA to open the door of the apartment where Woody was with his then girlfriend Masters. IZA was wearing a mask and entered the apartment. ZELOCCHI did not participate in the entry.

"IZA made his entry into the apartment brandishing a 9MM semi-automatic handgun, claiming to be an agent of the FBI and flashed a badge. IZA then gave verbal instructions to not make any moves and to follow instructions. IZA then assaulted Woody and Masters and demanded that Woody hand over his Rolex watch and his wallet. IZA then handcuffed Woody's hands and his legs and pulled out the handgun clip to show Woody there were bullets in the gun so that Woody would be compliant."

28. On or about March 12, 2022, IZA fraudulently from PARAMOUNT to engage in unlawful, felonious activity, including a physical attack on David Do ("DO") who was a friend of ZELOCCHI. IZA and QUINTERRO'S brother, Michael, to physically assault and rob DO of his laptop. The laptop in question was previously stolen from Woody by IZA.

29. On information and belief, QUINTENERO's assistance to IZA was unlawful, tortious, and in violation of Sheriff Department policies. Eventually, IZA told CHILDS that he (IZA) had paid "thousands of dollars" to QUINTENERO and others to conduct vehicle registration searches and to

perform wiretaps. On information and belief, IZA used QUINTENERO'S information to locate ZELOCCHI. As further information is developed, PLAINTIFFS anticipate substituting QUINTENERO and deputies as defendants for the DOES.

30. On or about March 30, 2022, and using information fraudulently obtained from PARAMOUNT, IZA directed two individuals, whose identities are currently unknown to PLAINTIFFS, to physically assault and rob ZELOCCHI to retrieve from ZELOCCHI the laptop IZA claimed to be his. ZELOCCHI is a resident of the 8000 block of Burton Way, Beverly Glen, Los Angeles. During that robbery attempt the unidentified individuals and ZELOCCHI exchanged gunfire, resulting in a response by the Los Angeles Police Department. ZELOCCHI told police the men escaped without taking any property. ZELOCCHI told authorities that he was afraid for his life.

31. At the time IZA hired PARAMOUNT, DEFENDANTS and the CONSPIRATORS concealed from PLAINTIFFS the circumstances of IZA'S criminal activity involving the facts set forth in the Woody and Kahn complaints. Had PLAINTIFFS known those facts, PLAINTIFFS would not have agreed to assist the DEFENDANTS and CONSPIRATORS.

32. DEFENDANTS' true purpose in hiring PARAMOUNT was unlawfully to obtain the laptop computer which contained evidence of their fraudulent scheme a secret.

33. On April 1, 2022, IZA was served with PLAINTIFFS' notice of the existence of a dispute between them as required under the Agreement.

34. Following IZA'S receipt of the arbitration notice, IZA and his fellow CONSPIRATORS and DEFENDANTS undertook malicious, willful, fraudulent, and tortious actions against PLAINTIFFS.

35. On April 9, 2022, PLAINTIFFS were informed by Square that IZA was disputing the $4,000.00 credit card transaction made on January 3, 2022, more than three months after the original authorization and just days after IZA received PARAMOUNT'S notice of a dispute between it and IZA.

36. On April 11, 2022, CHILDS learned that Wells Fargo Bank had frozen all his personal accounts and those of PARAMOUNT. Wells Fargo informed CHILDS the accounts were frozen because of a demand that the wire transfers described above were being recalled. It was then that CHILDS first heard of DREAM. Prior to being informed of the existence of DREAM, CHILDS had reasonably believed and

assumed that the wired funds had come directly from ZORT or IZA.

37. DREAM'S demand for a wire transfer occurred two months after being made, but only days after IZA received PARAMOUNT'S notice of a dispute between it and IZA.

38. CHILDS was informed by the Wells Fargo branch manager that the bank's corporate headquarters refused to disclose details other than that the freezing of the accounts was at DREAM'S request and was supported by a "demnification" [sic] agreement. PLAINTIFFS now believe that DEFENDANTS created a bogus document with CHILDS' forged signature which DEFENDANTS and the CONSPIRATORS submitted to Wells Fargo authorizing DREAM to reverse the wire transfers.

39. On April 15, 2022, PLAINTIFFS were informed by Square that IZA was disputing the $25,000.00 credit card transaction made on January 21, 2022, nearly three months after the original authorization and just days after IZA received PARAMOUNT'S notice of a dispute between it and IZA. The two demands for refunding of the credit card transactions resulted in a loss to PLAINTIFFS of $29,000.00.

40. On April 17, 2022, PLAINTIFFS were informed by Square that a PARAMOUNT credit card payment $12,841.30 to

Verified Unlimited Civil Complaint - 14

it from a wholly unrelated client had been used to affect a "refund" to ZORT. DEFENDANTS actions constituted a malicious and tortious interference with a business opportunity and business relationship with the PARAMOUNT client unrelated to DEFENDANTS.

41. The timing of the original payments and wire transfers and the subsequent attempts to reverse those charges for receipt of the notice constitute evidence of bad faith, retribution, and an implicit acknowledgement that DEFENDANTS did not have a valid objection to PARAMOUNT'S fees.

42. DEFENDANTS' actions as described hrein resulted in Wells Fargo freezing all of PARAMOUNT'S business funds on April 11, 2022, making it impossible for PARAMOUNT to conduct its business, including paying its expenses such as insurance, rent, employee salaries, independent contractors, and the like.

43. Because of IZA'S malicious actions, PARAMOUNT's reputation has been irrevocably damaged, its ability to recruit independent contractors for investigative work has been destroyed and its credit status and rating have been permanently damaged. Likewise, PARAMOUNT cannot pay CHILDS which has resulted in CHILDS' loss of reputation, credit status, reputation, and ability to pay his ongoing personal

expenses including his mortgage, taxes, utilities, and the like.

44. As a further consequence of DEFENDANTS' actions, automatic debit payments scheduled by CHILDS using his Wells Fargo account have been rejected causing CHILDS and PARAMOUNT to be adversely affected in their credit ratings, ability to conduct business, and to otherwise function.

45. The private investigation and security profession requires the use of skilled, experienced, and licensed individuals or employees to function. The operatives used by investigative and security firms are independent contractors who will work for agencies such as PARAMOUNT only if those operatives can be confident they will be asked to engage solely in lawful activities and that they will be promptly paid for the services and reimbursed for their expenses.

46. The business community of security and investigation is close knit. Its members communicate regularly with one another. Once an investigations/security agency's reputation for honesty and reliability is damaged, it can take years, if ever, to repair. Without such relationships PLAINNTIFFS' ability to bid for future work, hire those operatives or recruit new, replacement operatives and employees will be significantly impaired.

47. Because of DEFENDANTS' and CONSPIRATORS' actions, the long-standing business and financial relationships established by PLAINTIFFS have been irreparably damaged or destroyed.

## V.  CAUSES OF ACTION

### First Cause of Action
### Theft by Deception – Penal Code Section 532
### (Against all Defendants)

48. PLAINTIFFS refer to and incorporate all other paragraphs and information in this Complaint as though fully set forth herein.

49. The DEFENDANTS and CONSPIRATORS knowingly and by design and by false and fraudulent pretenses and representations defrauded PLAINTIFFS of their personal property and services by, among other things, making and/or procuring others to report falsely to Square and Wells Fargo, among others, about PLAINTIFFS' mercantile character and thereby obtained property belonging to and earned by PLAINTIFFS.

50. The value of that property was at least $130,000.00.

### Second Cause of Action
### Intentional Misrepresentation
### (Against all Defendants)

Verified Unlimited Civil Complaint - 17

51. PLAINTIFFS refer to and incorporate all other paragraphs and information in this Complaint as though fully set forth herein.

52. IZA made false representations to PLAINTIFFS as if they were true. Specifically, that his purpose in hiring PARAMOUNT was to locate a stolen laptop computer belonging to IZA and to use that information to assist law enforcement in arresting the thieves and recovering the laptop. IZA further falsely represented as true that his purposes in hiring PARAMOUNT were "lawful." Those false representations were expressed orally and in the Agreement.

53. IZA intended that PLAINTIFFS would rely upon those false representations. PLAINTIFFS reasonably relied upon those representations.

54. PLAINTIFFS suffered substantial financial and reputational harm by relying upon those false representations. PLAINTIFFS" reliance on those false representations was a substantial cause of their harm.

**Third Cause of Action**
**Business/Commercial Disparagement**
**(Against all Defendants)**

55. PLAINTIFFS refer to and incorporate all other paragraphs and information in this Complaint as though fully set forth herein.

56. DEFENDANTS made untrue statements about PLAINTIFFS to third parties.

57. Those false statements and disparaging comments identified CHILDS and PARAMOUNT by name.

58. The statements were made with malice, knowing they were false and were made with the intention of damaging PLAINTIFFS' reputations and for retrieving money rightfully belonging to PLAINTIFFS.

59. CHILDS expressly informed IZA that IZA owed PARAMOUNT money for its services and that IZA'S failure to pay PARAMOUNT would result in PARAMOUNT'S inability to pay its employees and operatives.

60. DEFENDANTS, acting in concert with the CONSPIRATORS, made false and fraudulent statements to Wells Fargo Bank; specifically, that PLAINTIFFS had perpetrated a fraud against them.

61. PLAINTIFFS suffered the actual harm of loss of funds totaling at least $130,000.00, the loss and impairment of long-established business relationships with employees, operatives and friends in the private investigation and security profession.

**Fourth Cause of Action**
**Unfair Business Practices**
**(Business & Profession Code §17000, *et.seq*)**
**(Against all Defendants)**

Verified Unlimited Civil Complaint - 19

62. PLAINTIFFS refer to and incorporate all other paragraphs and information in this Complaint as though fully set forth herein.

63. DEFENDANTS' and CONSPIRATORS' actions directed toward PLAINTIFFS were unlawful, unfair and fraudulent and thereby constituted unfair business practices in violation of Business and Professions Code Section 17000, et.seq.

### Fifth Cause of Action
### Intentional Infliction of Emotion Distress
### (Against all Defendants)

64. PLAINTIFFS refer to and incorporate all other paragraphs and information in this Complaint as though fully set forth herein.

65. The DEEFENDANTS' conduct was outrageous. Their conduct was intended to cause CHILDS emotional distress in retribution for CHILDS' efforts to collect money owed to him and PARAMOUNT and further to deflect attention and blame from the DEFENDANTS for their actions against ZELLOCHI and DO to CHILDS and PARAMOUNT in a malicious attempt to blame PLAINTIFFS for unlawful actions by the DEFENDANTS.

66. The DEFENDANTS acted with reckless disregard of the probability that CHILDS would suffer emotional distress, knowing that CHILDS would be present at key times

including CHILDS' dealings with Wells Fargo Bank, PLAINTIFFS' creditors and employees and the like.

67. CHILDS did, in fact, suffer and continues to suffer extreme emotional distress from the DEFENDANTS; conduct which was a substantial factor in CHILDS' distress.

## VI.  PRAYER FOR RELIEF

For the reasons set forth above, PLAINTIFF prays for judgment against the DEFENDANTS, and each of them, as follows:

a.) All funds taken, stolen or obtained by fraud or deception, totaling at least $130,000;

b.) Prejudgment interest;

c.) $5,000,000.00 in punitive damages, emotional distress, personal and professional injury to PLAINTIFFS' reputation, loss of business and interference with PLAINTIFFS' ability to conduct future business and employment relationships;

d.) Fees and costs; and

e.) And such other relief as is warranted by the evidence produced at trial.

Dated: May 9, 2022

Attorney for Plaintiff

Verified Unlimited Civil Complaint - 22

# Exhibit A

# PARAMOUNT
## INVESTIGATIVE SERVICES

CONFIDENTIAL

SERVICES AGREEMENT

Parties

The parties to this agreement are Paramount Investigative Services (hereafter, "the Agency") and Adam Zort or Adam Iza, (hereafter, "the Client").

Confidentiality

As licensed private investigators in the state of California we are bound by "confidentiality." It is Paramount Investigative Services policy that we will **_NOT_** disclose any information without the express written consent from the client. However, on rare occasions we must provide the clients information to law enforcement. FYI: often times we are subpoenaed to provide information. Again, we will NOT disclose information unless our attorney insists that we provide it. {These subpoenas must be in conjunction with open litigation and not a "fishing expedition." NOTEWORTHY: to combat us from being subpoenaed, we urge you to have your attorney hire PIS. Your attorney hiring PIS, protects both parties via litigation support privilege and/or work product privilege.}

Scope of Work

The Agency has been hired by the Client to perform surveillance and try to establish what apartment this person resides. We are to follow this person and contact the client to assist with the possible arrest or confrontation for Adam's electronic devices. It is agreed that only the Client is permitted to authorize Agency personnel to perform tasks and incur fees and expenses. The Agency reserves the right to determine in its sole discretion which investigative techniques and methods to use in its investigation on behalf of the Client.

Fees

The Client understands and agrees that the Agency is to be paid for its time and expertise as follows: $125.00 per hour for surveillance investigators unless it's under 48 hour notice, then surveillance rates are 150.00 hour. In office investigations are charged at 150.00 per hour. All Agency personnel time will be calculated in tenths of an hour increments after the 4hr minimum has been exhausted. The Client understands and agrees that billable time may include: travel time to and from interviews, surveillances, trials, hearings, depositions. "Billable time also includes but not limited to; all research, report preparation, video processing, and time spent speaking to and meeting with the Clients and their attorneys.

Expenses

The Client agrees to reimburse the Agency for all reasonable expenses incurred during and as part of its representation of the Client. Expenses will be itemized on each invoice by date, description and amount. Reimbursable expenses include, but are not limited to: credit card processing fee of .03%, equipment rental, parking and meals for

DocuSign Envelope ID: 296F34A4-D291-4A60-A120-91E9A6D7E254

# PARAMOUNT
## INVESTIGATIVE SERVICES

CONFIDENTIAL

agency personnel consumed in connection with necessary activities or outside normal business hours of 8:30 a.m. and 5:00 p.m. The Agency will maintain copies of all receipts for individual expenses in excess of $25.00 which will be available upon request. The Agency agrees to obtain Services Agreement the Client's permission before incurring any single expense if it reasonably appears to the Agency in advance that the expense is likely to exceed $50.00.

Retainer

A retainer in the amount of 1,000.00 will be required before any work will be performed, or any expenses incurred. The setting of this retainer amount is not a prediction by the Agency that the retainer amount will be sufficient to cover all future services and expenses. If the retainer becomes exhausted before completion of this project, the Client agrees to replenish the retainer by an amount mutually agreeable to the parties. The Client understands and agrees that if the retainer is exhausted and not replenished for whatever reason, the Agency is entitled to cease all work and close its file. The Agency agrees to return any unused retainer if the Client either discharges the
Agency before completion of the project or the project is completed, and an unearned balance remains in the retainer account. The Client agrees to pay the Agency for any un-reimbursed fees or expenses if the retainer is not sufficient to cover expenses and services performed at the time the file is closed.

Invoices

The Agency will bill the Client at least monthly or more frequently as determined by the Agency. Invoices will be sent to the Client at the address shown above. All statements will include services performed and expenses incurred since the previous statement, the itemized expenses, activities of the individual investigators including their total hours and fees and show the full amount due for that billing period. If a retainer has been provided, the Agency will deduct the amount due and reflect the retainer balance on the statement. If no retainer has been provided or the retainer account balance is insufficient to pay the amount due, the Client agrees to pay the full amount due within 30 days of the date of the invoice. Payment may be made by check or money order payable to the Agency.

If the amount due is not paid in full within the above designated time, the Agency reserves the right to terminate its services permanently or until such time as the full amount due has been paid.

Late Payment/Non-Payment

The Client agrees that the Agency may, at its option, charge interest on any amounts more than 30 days overdue at a rate 5% simple interest. The Client also agrees that the Agency may refer to a collection agency any unpaid balances overdue more than sixty (60) days. The Client agrees to be liable for all costs associate with collection including attorney fees and service of process.

DocuSign Envelope ID: 296F34A4-D291-4A60-A120-91E9A6D7E254

# PARAMOUNT
## INVESTIGATIVE SERVICES

CONFIDENTIAL

### Fee and Expense Cap

The parties have agreed that the Client authorizes the Agency to perform services and incur expenses up to a total maximum of N/A. The Agency agrees to make a good faith effort but does not guarantee to notify the Client sufficiently in advance of the probable reaching of any cap in order to avoid an interruption of service. The cap may be extended by mutual agreement of the parties.

### Back Out Clause

Once the service is agreed upon and entered into contract by the client.  The retainer will be taken and the investigators will commit it to their schedule.  At that point, the client can not back out.  If the client and investigator agree to terminate the assignment there will be a fee of 4hrs.  If there a request to terminate the assignment is under 48hrs or two days, an 8 hour day will be charged to the client.  If discovered that the client for any reason lied/mislead investigators as to the scope of the investigation, the investigator will terminate the investigation and keep the retainer.  If the client {accidentally or otherwise} "tips off" the subject of the investigations, the investigation will be terminated and charged accordingly.  If any remaining balance is due, it will be returned via check. NOTE: due to the amount of credit card fraud, the monies will be returned via check after the funds have cleared the banks {up to but not limited to 3 weeks}.

### Reports

The Agency agrees to provide oral and/or written reports exclusively to the Client as are necessary and reasonable in the Agency's sole discretion and may provide a final written report to the Client, unless requested to not do so. The Client understands and agrees that the Agency will not be obligated to provide any oral or written reports unless all previous invoices have been paid in full. All written reports may be provided exclusively to the Client at the address shown below.

### File Copies

The Client agrees that after the file is closed the Agency shall be permitted to retain copies of all reports, invoices, exhibits or evidence acquired during the investigation, including copies of all documents, photos, films, videos and the like provided to the Agency by the Client.

### Warranties/Guarantees

The Client warrants and guarantees that: (a) it has retained the Agency's services solely and exclusively for the reasons and purposes described above; (b) the Client is not working for any other individual or entity with an interest in the outcome of the Agency's services; and (c) the Client agrees to use the results of the Agency's investigation solely for lawful purposes.

DocuSign Envelope ID: 296F34A4-D291-4A60-A120-91E9A6D7E254

# PARAMOUNT
## INVESTIGATIVE SERVICES

CONFIDENTIAL

The Agency warrants and guarantees that: (a) it will professionally and diligently perform the services described above; (b) that it will use only lawful means to conduct its investigation; and (c) that it will maintain Client confidentiality to the extent required and permitted under California and Federal law. The Client authorizes the Agency to use the services of others to assist in carrying out this agreement and the Client further authorizes the Agency to share confidential client information with other investigative agencies or experts hired by the Agency to assist in the investigation and with the Agency's legal counsel to obtain legal advice.

The Agency does not and cannot warrant or guarantee any particular result or outcome from its investigative efforts. The Client understands and agrees that the Agency cannot guarantee the accuracy of information provided to it by witnesses, government agencies, news services, web sites, data brokers and other sources. Therefore, the Client assumes all responsibility and liability for any reliance on information provided by the Agency and any disclosures of such information made by the Client to third parties.

Any estimates on the likely costs of the Agency's services or the time required to complete our services are simply good faith estimates and do not constitute a prediction or guarantee.

Termination

The Client and Agency each reserve the right to terminate this agreement at any time and for any reason. Each agrees to notify the other orally, if feasible, and thereafter in writing. The Client agrees to pay and reimburse the Agency for any services and expenses earned or incurred until receipt of the written notice of termination.  See "back out clause" for further details to termination fees.

Dispute Resolution

All disputes, claims and counterclaims arising out of, relating to, or in connection with this Agreement, whether based on statue, tort, contract, common law or otherwise, ("disputes') shall be resolved by binding arbitration as described herein. Any Party may commence binding arbitration proceedings to resolve a dispute by providing the other Party written notice of its intent to arbitrate. Arbitration shall be conducted in accordance with the procedures set forth in Title 9, Part III of the California Code of Civil Procedure (Sections 1280, et. seq.). The arbitration shall be conducted in Los Angeles County, California and California law shall govern all proceedings. The arbitrator shall be an independent third party agreed to by the Parties. If the Parties cannot agree to an arbitrator within fifteen (15) days from the date of the notice of intent to arbitrate, either Party may petition the Superior Court of Los Angeles County for the appointment of a neutral arbitrator. The cost of the arbitrator's fees, including the costs of the facility and the administration of the arbitration shall be shared equally by the Parties. Attorney fees and costs incurred by the Parties shall be paid in the manner determined by the arbitrator. Judgment upon an award by the arbitrator may be entered in any court having jurisdiction, or application may be made by either party to such court for a judicial confirmation and acceptance of the award and an order of enforcement, as applicable.

**PARAMOUNT**
INVESTIGATIVE SERVICES

CONFIDENTIAL

Counterpart

      This Agreement may be executed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and same instrument.
I have carefully reviewed the above agreement and agree to its terms and have received a copy of the Agency's Client Information Form.

DocuSigned by:

*Adam Zort*
148AEF02D1BF445...
[CLIENTS (S) SIGNATURE (S)]

Date: 11/25/2021

Adam Zort

[CLIENT(S) NAME(S)]

277 st Pierre rd, Los Angeles

[ADDRESS]

3107797700

[PHONE NUMBER]

## Payment Authorization Form

Please complete all fields.

| Credit Card Information: | | | |
|---|---|---|---|
| Card Number: 372656387011009 | - | - | - |
| Expiration Date (mm/yy): 02/26    / | | | |
| Security Code: 7618 | | | |
| Cardholder ZIP Code (from billing address): 90014 | | | |
| Payment Amount: $1,000.00 +3% service fee | | | |

DocuSigned by:

Authorization Signature: *Adam Zort*
148AEF02D1BF445...

DocuSign Envelope ID: 527BC90E-59D9-4A78-837F-42AE2A1C529C

## **Verification**

I am a Plaintiff in the above-captioned complaint. I am over the age of 18 years and declare as follows:

1. The information contained in the complaint is true and correct and those allegations based on information and belief are true and correct to the best of my knowledge and information.

2. Exhibit A, attached to the complaint is a true and correct copy of the Agreement referred to in the complaint.

I declare under penalty of perjury under the laws of California that the foregoing is true and  correct, and that this declaration was executed on 5/9/2022_____ at Los Angeles, California.

DocuSigned by:

*kenneth Childs*

6A9DFDA1D53D45C...

Kenneth Childs

# EXHIBIT B

RONNIE MIRANDA (SBN: 291757)
9350 Wilshire Blvd.
Suite 203
Beverly Hills, CA 90212-3204
Tel:    323-855-6084
Email: ron@rmcounsel.com

Attorney for Plaintiff
Troy Anthony Woody

**FILED**
Superior Court of California
County of Los Angeles

**08/02/2022**

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Deputy
A. Wiggins

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

| | |
|---|---|
| TROY ANTHONY WOODY, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>ZORT Inc., a Delaware corporation, ADAM IZA aka ADAM ASAAD IZA aka AHMED FAIQ, an individual; IRIS AU, an individual; ENZO ZELOCCHI, an individual; and, DOES 1-25, inclusive,<br><br>        Defendants. | CASE NO. 22STCV06878<br>*Civil Unlimited*<br>Assigned to Hon. Rupert A. Byrdsong<br>Dept. 28<br><br>**AMENDED COMPLAINT FOR DAMAGES FOR:**<br><br>   1) **CIVIL CONSPIRACY;**<br><br>   2) **CONVERSION;**<br><br>   3) **VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18.U.S.C. § 1961, et seq.;**<br><br>[DEMAND FOR TRIAL BY JURY] |

Plaintiff Troy Anthony Woody alleges as follows:

## PARTIES

1.    Plaintiff Troy Anthony Woody ("Woody") is an individual, and at all times relevant to this Complaint was a resident of the State of California.

2.    Defendant ZORT Inc. is a corporation organized and existing under and by virtue of the laws of the State of Delaware and is duly authorized to conduct business in the State of California.

Electronically Received 08/02/2022 06:00 PM

1

**AMENDED COMPLAINT**

3.     Defendant Adam IZA aka Adam Asaad IZA aka Ahmed Faiq ("IZA") is an individual, and at all times relevant to this Complaint was a resident of the State of California.

4.     Defendant Enzo ZELOCCHI ("ZELOCCHI") is an individual, and at all times relevant to this Complaint was a resident of the State of California.

5.     Defendant Iris AU ("AU") is an individual, and at all times relevant to this Complaint was a resident of the State of California.

6.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants Does 1 through 25, inclusive, are unknown to Plaintiff, who therefore sue Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this pleading to show the true names and capacities of such Defendants when the same have been ascertained. Plaintiff is informed and believes, and on that ground alleges that each of the fictitiously named Defendants are responsible to Plaintiff for the injuries and damages suffered or alleged herein and are subject to the jurisdiction of the Court herein for the relief requested.

**JURISDICTION AND VENUE**

7.     Plaintiff is informed and believes, and based thereon allege, that this Court has proper jurisdiction for this action and venue is proper here because acts and omissions which are the subject of this action occurred in this Judicial District in the County of Los Angeles, State of California.

8.     Plaintiff is further informed and believes, and based thereon allege, that this Court has proper jurisdiction for this action because the acts of Defendant ZELOCCHI, Defendant IZA, Defendant AU, Defendant ZORT Inc., and Does 1-25 took place in this Judicial District in the County of Los Angeles, State of California, at the time during which Defendant ZELOCCHI, Defendant IZA, Defendant AU, and Does 1-25 resided in this Judicial District in the County of Los Angeles, State of California and Defendant ZORT Inc. conducts sufficient business in the State of California.

//
//
//
//

2

**AMENDED COMPLAINT**

## GENERAL ALLEGATIONS

### Nature of the Action

9.     This case involves the theft of approximately 7100 Bitcoin and some alternative cryptocurrency collectively worth approximately $284,500,000.00 in today's value. Around ten years ago, when Woody was a teen, he began mining the Bitcoin by creating and validating cryptocurrency transactions on a blockchain network and had amassed a significant amount of cryptocurrency which Woody stored access to in cryptocurrency wallets on several devices. The substantial portion of Bitcoins are on Bitcoin Core which is a hardware wallet that requires access from Woody's laptop devices to access to transfer funds. In addition, Woody had several smartphones with cryptocurrency that used the blockchain.com app which contained access to transfer funds.

10.     On the evening of September 1, 2018, Woody along with friend Eric Taylor ("Taylor") and Defendants ZELOCCHI and IZA collectively met for a dinner, planned and arranged by Defendant ZELOCCHI. ZELOCCHI's stated purpose for this dinner was to discuss cryptocurrency investing and opportunities and the dinner took place at 25 Degrees, 7000 Hollywood Blvd., Hollywood Roosevelt Hotel, Los Angeles, CA 90028.

11.     Only a few hours later, on September 2, 2018, at approximately 1:45 am, Woody, Taylor and friend Michelle Masters ("Masters"), were peacefully gathered at an apartment located at 7400 Hollywood Blvd.  ZELOCCHI contacted Taylor to come down to lobby. There Taylor recognized ZELOCCHI and IZA from the dinner earlier and ZELOCCHI and IZA subsequently forced pills into Taylor's mouth to ingest. ZELOCCHI and IZA proceeded to handcuff Taylor and further assault Taylor while asking him where the electronic devices were located. Taylor's apartment keys were taken from him and used by IZA to open the door of the apartment where Woody was with his then girlfriend, Masters. IZA was wearing a mask and entered the apartment. ZELOCCHI did not participate in the entry. Almost instantly, Woody could identify IZA as the assailant who entered the apartment from his voice and body type after having had dinner with him just a few hours earlier.

12.     IZA made his entry into the apartment brandishing a 9MM semi-automatic handgun, claiming to be an agent of the FBI and flashed a badge. IZA then gave verbal instructions to not make any moves and to follow instructions. IZA then assaulted Woody and Masters and demanded Woody

3

**AMENDED COMPLAINT**

hand over his Rolex watch and his wallet. IZA then handcuffed Woody's hands and his legs and pulled out the handgun clip to show Woody that there were bullets in the gun so that Woody would be compliant. The handcuffing caused Woody significant pain and discomfort throughout the ordeal. IZA then proceeded to confiscate a Phillip Plein shirt and Phillip Plein matching pants that was similar to the outfit that Woody had worn earlier that evening but it was clear that IZA's focus was on the theft of the smartphones and laptops which he seized, along with the watch and wallet which IZA placed in bag owned by Woody that was in the apartment. IZA then paused for a moment to take a picture of Woody handcuffed by using his own mobile device. Woody then stated to the assailant that he knew it was IZA which caused IZA to then remove his mask to show Woody his face. IZA then proceeded to aim the handgun at the direction of Woody and pulled the trigger as Woody watched in horror. Fortunately, the handgun did not fire as IZA rushed out to leave the apartment.

13.     The following items owned by Woody were stolen by IZA, collectively "Stolen Items":

- HP Spectre x360 (Model 15-bl112dx) laptop, black color, purchased on 02/23/2018 for $1,536.99 containing 2000 Bitcoin worth approximately $80,000,000.00 in today's value;

- Lenovo laptop black/grey color containing 5000 Bitcoin worth approximately $200,000,000.00 in today's value;

- Hewlett Packard laptop black/grey color containing 20 Bitcoin worth approximately $800,000.00 in today's value;

- Blackberry smartphone containing 50 Bitcoin worth approximately $2,000,000.00 in today's value;

- Samsung Galaxy 9 Plus Edge dark blue or black smartphone containing 20 Bitcoin worth approximately $800,000.00 in today's value;

- Samsung Galaxy 9 Plus Edge dark blue or black smartphone containing various cryptocurrency including Altcoins worth approximately $500,000 in today's value;

- iPhone 7 Plus gold color smartphone, containing 10 Bitcoin worth approximately $400,000.00 in today's value.

- iPhone 6s gold color smartphone;

- Yellow Gold Rolex Submariner (Reference # 116618 LB) worth approximately $50,000.

4

**AMENDED COMPLAINT**

- Phillip Plein outfit consisting of shirt and matching pants worth approximately $3,000.
- Wallet containing personal identification, credit cards, debit cards and cash in the approximate amount of $3,000.

14.     Woody, along with Taylor and Masters, were in a state of shock after the incident. Woody grabbed what few personal items he had and fled the scene in fear of his safety. A friend of Woody then rented an Airbnb apartment and Woody, along with Taylor and Masters hid out for a couple of days during which Defendant IZA and Defendant ZELOCCHI attempted to contact him repeatedly to ask for the password access to the devices they could not access. In the days to follow, Iza would send that picture to Woody handcuffed from the incident in an effort to intimidate Woody into providing password information to access to certain devices.

15.     Defendant IZA and Defendant ZELOCCHI made no attempt to hide that they were behind the theft and assault. A few days after the incident Defendant IZA and Defendant ZELOCCHI were so emboldened and brazen enough to attempt to use Woody's stolen credit card from his wallet to purchase a luxury belt but left the store when the customer representative asked for identification.

16.     On or about September 4, 2018, Woody came out of hiding and went directly to the police station to file a police report. Woody explained to the police that (A) it was ZELOCCHI and IZA who attacked Taylor in the apartment lobby and (B) he could identify IZA as the assailant who entered the apartment, and (C) his personal property and certain laptops and smartphones were stolen. The officer stated that these kinds of things happen often and there was not much the LAPD could do.

17.     The assault on Woody and theft of Woody's devices and subsequent theft of Woody's cryptocurrency was devastating for Woody. Woody was deeply affected in the immediate days after the event and has been in a severe state of distress both mentally and emotionally since the incident. This cryptocurrency accounted for most of Woody's net worth at the time it was stolen and has left Woody in financial dire straits since.

18.     In order to create useable monetary liquidity from the cryptocurrency funds initially derived from the theft of those certain devices listed as Stolen Items, Defendants, either as individuals, or under the veil of various shell companies have collectively engaged in unlawful acts or activities in order to fund their extravagant lifestyle. Those companies, exist only on paper and have no real physical

5

**AMENDED COMPLAINT**

offices, and include, but are not limited to, ZORT, Vurg Inc., Dream Agency, Inc., Inspired Marketing, Inc., HQ Media Services, LLC., T8C Brand LLC., ZORT (and likely other entities), all without active business operations, employees, significant assets or demonstratable revenue.

19.    Initially, Defendants transferred cryptocurrency out of the existing bitcoincore, elctrum and blockchain.com wallets from certain devices listed as Stolen Items. Defendants would transfer to multiple other wallets small amounts at a time. This is a practice commonly known as "smurfing" to evade detection and as a tax avoidance. At first, Milad Sarwari would route those funds through a generic CHASE account out of Las Vegas, NV, however, the funds became too large and too numerous and ultimately the ruse was discovered, and the account was closed by the bank.

20.    Defendants then developed more sophisticated schemes to disguise the various cryptocurrency financial assets so they can be used without detection of the illegal activity that produced them and without exposure to tax liability. One example, was Defendants use of the following Etherscan Account:

0x15f7DE0fB0880A0e3B4E9FE7428E5D6AF6bB8702

Utilizing this account, Defendants, have transacted over $15M through this wallet using Binance, Remitano and Coinbase platforms seen here:

https://etherscan.io/address/0x952828fb7a6a2d3ada0ee318eeb0ac9b2735ca2d#tokentxns

21.    Defendants then shifted strategies in early 2021, leaving behind the use of "mules" to launder the money like Milad Sarwari and proceeded to link that Etherscan wallet to transact with the ZORT Coinbase account and Altonomy, mainly via trader Clarence Lim based in Singapore. Altonomy is an over-the-counter ("OTC") broker who has emerged as the lynchpin of a new type of money laundering, helping to turn at least $2.8 billion worth of Bitcoin into cash for criminal entities in 2019 alone, according to a new report from crypto forensics firm Chainalysis. OTC brokers like Altonomy are a familiar fixture in both the crypto and conventional stock trading worlds, and many of them are legitimate. In the case of Bitcoin, they connect buyers and sellers who want to trade large amounts of the currency without listing it on an exchange—often out of concern that making the trade public could cause a price swing.

**AMENDED COMPLAINT**

22.     Defendants then created Zort cryptocurrency, a unique alternative cryptocurrency, to more effectively trade large amounts without transparency or regulation. By listing Zort Coin on crypto Exchange Kucoin.com, defendants were to essentially "wash" bitcoins. Defendants continue to use ZORT to launder money using ZORT's subscription system comprised of false accounts not belonging to genuine users to facilitate transactions and using ZORT as the front to effectively "launder" money through Altonomy.

23.     Collectively, Defendants, neither of who have achieved higher education beyond High School, nor who would be unable to demonstrate lawfully generated income, would be hard pressed to show transparency as to how they fund a lifestyle that grossly supersedes the usual bounds and exceeds the limits of reason or necessity.

24.     Before the incident IZA was unable to afford a permanent residence and temporarily living with ZELOCCHI. Since the incident, IZA has moved his primary residence, first to an estate in the Holmby Hills / Bel Air area for most of the time since the incident and more recently to similarly exclusive Newport Coast area. The monthly rent for these homes likely exceeds $40,000. Currently, the six (6) cars that are parked at the home in the Newport Coast area are two Lamborghinis, a Ferrari, a Rolls Royce, a Cadillac Escalade and a Vanderhall Motor's Edison[2].

25.     Since the incident IZA lives with Defendant AU and Defendant AU's mother, Consuelo Rabaya. Neither IZA, AU nor Ms. Rabaya seemingly have the verifiable income or previously obtained wealth to proportionally reflect their living situation and are undoubtedly living a lifestyle that is beyond their means until after the incident on September 2, 2018.

### FIRST CAUSE OF ACTION

### FOR CIVIL CONSPIRACY

### (Against Defendants IZA, ZELOCCHI, and Does 1-10)

26.     Plaintiff incorporates herein by this reference as though set forth in full paragraphs 1-25 of the Complaint as though fully set forth herein.

**AMENDED COMPLAINT**

27. Defendant IZA and Defendant ZELOCCHI formed and enacted a conspiracy to deprive Plaintiff Woody of his cryptocurrency.

28. Defendant IZA and Defendant ZELOCCHI had a meeting of the minds on the object to be achieved and the course of action for accomplishing the resulting theft of the devices and the cryptocurrency contained on those devices.

29. Stealing the devices containing the cryptocurrency was an overt act unlawful act in furtherance of that conspiracy.

30. Defendant ZELOCCHI was aware that Defendant IZA planned to commit the assault, false imprisonment, and theft against Woody.

31. Defendant ZELOCCHI agreed with Defendant IZA's intention that assault, false imprisonment, and theft be committed against Woody.

32. Plaintiff Woody incurred damages as a proximate result of Defendants' conspiracy to steal Plaintiff's cryptocurrency.

## SECOND CAUSE OF ACTION

### FOR CONVERSION (Taking of Laptops and Smartphones)

### (Against Defendants IZA, ZELOCCHI, and Does 1-10)

33. Plaintiff incorporates herein by this reference as though set forth in full paragraphs 1-32 of the Complaint as though fully set forth herein.

34. Defendant IZA and Defendant ZELOCCHI wrongfully exercised control over Plaintiff Woody's personal property, the electronic devices listed within the Stolen Items as defined herein, by taking those devices from Woody with force and without permission.

35. Plaintiff Woody owned the electronic devices (laptop and smartphones) which are here at issue, as well as the contents of those devices, which includes access to the Bitcoin here at-issue.

36. Defendant IZA substantially interfered with Woody's property by knowingly or intentionally taking possession of the devices and refusing to return them to Plaintiff after Plaintiff Woody demanded their return from Defendants.

37. Woody did not consent to IZA's taking.

8

AMENDED COMPLAINT

38.    Woody was severely harmed by the loss of his property and its contents.

39.    ZELOCCHI and IZA's conduct was a substantial factor in causing Woody's harm.

40.    Woody now seeks the return of his property, including the contents present at the time his property was taken from him.


### THIRD CAUSE OF ACTION

### FOR VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT

### ORGANIZATIONS ACT, 18 U.S.C. §1961 *et seq.*

### (Against All Defendants)

41.    Plaintiffs incorporate herein by this reference as though set forth in full paragraphs 1-40 of the Complaint as though fully set forth herein.

42.    As described above, Defendant IZA feloniously took Woody's personal property, including the bitcoins contained therein. IZA took Woody's personal property from Woody's person or immediate presence, against his will, and accomplished this by means of force or fear – by threatening Woody with a 9MM semi-automatic handgun.

43.    Defendant IZA did this in coordination (in conspiracy) with defendant ZELOCCHI. Furthermore, it is our belief that Defendant IZA retained possession of all devices and possession except for the Rolex watch, Blackberry smartphone and the HP Spectre x360 laptop which are in the possession of Defendant ZELOCCHI.

44.    Thereafter, Defendant IZA and Defendant ZELOCCHI obtained the Bitcoins from the personal property of Woody. Those Bitcoins rightfully belonged to Woody.

45.    After wrongfully obtaining Woody's Bitcoins, Defendant IZA and Defendant ZELOCCHI brought further individuals into their racketeering enterprise. One such individual was Defendant AU, Defendant AU's mother, Consuelo Rabaya and Milad Sarwari who helped IZA and ZELOCCHI take Woody's Bitcoins, and through elaborate transactions, Defendants were able exchange them for U.S. Dollars.

46.    The Lenovo laptop had Bitcoin Core and Electrum; the Hewlett Packard laptop as well as the two Samsung S9 smartphones and iPhone 7 Plus smartphones had blockchain.com. The Blackberry

9

had blockchain. These devices were listed as Stolen Items and in total, the cryptocurrency worth approximately $284,500,000.00 in today's value.

47. Defendants would transfer smaller amounts in multiple transfers over time to other cryptocurrency wallets, including transfers to accounts in the name of Defendant ZELOCCHI, Defendant AU, and Milad Sarwari, as well as affiliated shell companies owned and managed by Defendants. From these wallets, Defendants would transfer funds into an Altonomy securities trading platform, including brokerage accounts handled by trader Clarence Lim based in Singapore, who would subsequently then issue bank wire transfers into offshore bank accounts. Some of these OTC trades were at times completed by utilizing Telegram software as user "@zorttrader" which belonged to the Defendants.

48. Defendants further created a cryptocurrency called Zort and Defendants and their conspirators have actively participated in currency manipulation of Zort cryptocurrency in order to artificially inflate or lower the value of the Zort cryptocurrency to enable the transfer of Woody's Bitcoins into U.S. Dollars to fund their extravagant lifestyle.

49. Defendant IZA has also operated Defendant ZORT Inc., a Delaware corporation, which is an artificial intelligence cryptocurrency trading platform, to further facilitate the transfer of Woody's Bitcoins into U.S. Dollars. Defendant ZORT Inc. similarly utilized Altonomy to trade large amounts of the currency without listing it on an exchange. Defendants, as well as related subsidiaries and the respective offshore bank accounts were used by Defendants to funnel and transfer funds into domestic accounts, and to hold property, in the name of Defendants, as well as shell companies owned and managed by Defendants. Defendants would purchase assets, including vehicles, luxury clothing, apparel accessories and jewelry.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

1. For damages to be determined at trial, including, but not limited to, compensatory damages, which are believed to exceed $284,556,000.00.

2. For punitive and exemplary damages in an amount appropriate to punish or set an example of Defendant IZA, individually and Defendant ZELOCCHI.

**AMENDED COMPLAINT**

3.    For interest, including prejudgment interest and other economic and consequential damages in such amounts as may be determined at trial;

4.    For costs of suit incurred herein.

5.    For such other and further relief as the Court may deem proper.

**For RICO Cause of Action**:

1.    For Actual Damages

2.    For Treble Damages Pursuant to 18 U.S.C. §1964(c)

3.    For Attorney's Fees Pursuant to 18 U.S.C. §1964(c)

4.    For Costs of Suit

DATED:  February 24, 2022, and as Amended on July 31, 2022

By:    _Ronnie Miranda_____
RONNIE MIRANDA
Attorney for Plaintiff

**AMENDED COMPLAINT**